1    Paul H. Duvall (SBN 73699)
     E-Mail: pduvall@kingballow.com
2    KING & BALLOW
     6540 Lusk Blvd., Suite 250
3    San Diego, CA 92121
     (858) 597-6000 Facsimile: (858) 597-6008
4
     Mark L. Block (SBN 115457)
5    E-Mail: mblock@wargofrench.com
     WARGO & FRENCH LLP
6    1888 Century Park East; Suite 1520
     Los Angeles, CA 90067
7    (310) 853-6355 Facsimile: (310) 853-6333

8    Attorneys for Defendants BEGGARS GROUP
     HOLDINGS (USA), INC., a New York Corporation;
9    BEGGARS BANQUET RECORDINGS (USA), INC.,
     a New York Corporation; XL RECORDINGS (USA), INC.,
10   a California Corporation;

11            **UNITED STATES DISTRICT COURT**

12       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14   LINDA ELAINE GOOD, LAURA          Case No. 2:14-cv-2668 SVW (JCG)
15   ELIZABETH GOOD, and, THE
     LAURA GOOD AND LINDA GOOD          The Honorable Stephen V. Wilson
16   PARTNERSHIP,
                                        **RESPONSE IN OPPOSITION TO**
17              Plaintiffs,             **APPLICATION FOR TEMPORARY**
                                        **RESTRAINING ORDER**
18        v.

19   TAHLIAH BARNETT, BEGGARS
     GROUP HOLDINGS (USA), INC.,
20   BEGGARS BANQUET
     RECORDINGS (USA), INC., XL        **DEMAND FOR JURY TRIAL**
21   RECORDINGS (USA), INC., and
     YOUNG TURKS LIMITED, and
22   DOES 1-10.

23              Defendants.

24

25        Come now Beggars Group Holdings (USA), Inc., Beggars Banquet Recordings

26   (USA), Inc., and XL Recordings (USA), Inc. (collectively "Beggars") by and through

27   their attorneys and file this response in opposition to Plaintiff's ("The Twigs") *Ex Parte*

28   Application for Issuance of a Temporary Restraining Order and Order to Show Cause

1 | re: Preliminary Injunction and state as follows:

2 | Beggars signed a recording agreement with musical artist Tahliah Barnett which

3 | gave it exclusive rights to Ms. Barnett's sound recordings. For years, Ms. Barnett was

4 | known as "Twigs" both in her personal and professional life. However, during her

5 | relationship with Beggars, Ms. Barnett has been known as "FKA Twigs." FKA Twigs

6 | is a critically acclaimed R&B musician whose "voice now brings to mind Janet Jackson

7 | at her most delicate on tracks like the devastating fist single, "Water Me", which

8 | features production from the young breakout producer – and *Yeezus* collaborator –

9 | Arca." DE 10-2 at 4.

10 | On the other hand, The Twigs perform alternative pop music that is "dreamy,"

11 | "cosmic," and "ethereal." DE 10 at 6. Furthermore, the only album The Twigs have

12 | released in the last 7 years is a children's album. DE 10 at 45. According to their

13 | papers, The Twigs registered the Service Mark, "THE TWIGS" in International Class

14 | 041 for entertainment in the form of musical performances. DE 8 at 1. The Twigs

15 | claim that FKA Twigs's use of the name FKA Twigs infringes upon "THE TWIGS"

16 | service mark.

17 | It is not clear why Beggars has been named as a party to The Twigs' request for a

18 | temporary restraining order. Beggars has a relationship with one of these performers,

19 | but that relationship is not dependent on the use of any particular name, and is instead

20 | premised on the extraordinary talent of Ms. Barnett. Beggars is simply Ms. Barnett's

21 | record label and is, at most, a collateral party to this litigation. This is a dispute between

22 | two performers about the use of two different names. That is made clear by the fact that

23 | The Twigs's Service Mark is only applicable to live performances and not to the

24 | distribution of recorded music.

25 | However, based on the differences between the name FKA Twigs and "The

26 | Twigs" and the differences in the types of music played by both artists, Beggars does

27 | not believe that FKA Twigs infringes upon The Twigs mark, or that The Twigs will be

28 | irreparably harmed if the Court does not issue a temporary restraining order. This belief

RESPONSE IN OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER

is supported by The Twigs' failure to timely act to protect their Service Mark. The Twigs admit in their papers that in June 2013, approximately ten (10) months prior to filing the present motion, they learned "Barnett was selling and promoting music in the United States under the name 'Twigs.'" DE 8 at 1. Further, The Twigs state in their papers they hired an attorney regarding this issue on August 30, 2013, almost eight (8) months prior to the present motion. DE 8 at 2. Notwithstanding this knowledge, The Twigs now claim they did not learn until eight (8) days ago that FKA Twigs was to hold a concert today, April 10, 2014, in Los Angeles, California. DE 8 at 3. Even assuming this is true, The Twigs then waited until last night, at approximately, 11:30 p.m. PST, on April 9, 2014, to seek an Ex Parte Temporary Restraining Order. DE 8.

## I.      There is No Legitimate Dispute between Beggars and The Twigs

The Twigs have not stated a legitimate dispute with Beggars because the Twigs' Service Mark does not cover the same products and services offered by Beggars. The Twigs have registered the Service Mark, "THE TWIGS," in class 041, which applies to the live performance of music. Beggars, on the other hand, is a record label generally in the business of manufacturing and distributing recorded music. Ex. A Declaration of Andrew Coffman at ¶ 5. In particular regarding FKA Twigs, Beggars entered a recording agreement with her on or about, October 16, 2012, in which she agreed to provide her exclusive services for the creation of recorded music.[1] Ex. A at ¶¶ 6-7. That recording agreement does not permit Beggars to exploit the FKA Twigs name for purposes of the live performance of music, and Beggars does not use the name for that purpose.

Although The Twigs in their papers repeatedly make reference to the selling of recorded music, and claim to have been recording music since the mid-1990's, The Twigs do not

---

[1] Beggars is force to rely on this declaration instead of submitting the agreement itself because the agreement is confidential and contains proprietary information. The Twigs late filing of the instant motion has prevented Beggars from being able to comply with all the requirements for the filing of a document under seal and thus, Beggars cannot timely submit the recording agreement.

1  have a registered trademark for the distribution of recorded music. See e.g. DE 8 at 6,

2  7, 11. At no time between the initial filing for the Service Mark and the present did The

3  Twigs see the need to file a registration for the recording of music. The sale of recorded

4  music ("sound recordings") falls under trademark Class 09. The Twigs do no allege

5  they own the Service Mark "THE TWIGS" for Class 09. Thus, any claims against

6  Beggars for use of the FKA Twigs name in the manufacture and distribution of recorded

7  music are unsupported.

8  In registering their Service Mark, The Twigs chose to register only in the class related to

9  the live performance of music. See T.M.R.P. 2.32(a)(7). Thus, even if FKA Twigs was

10  infringing on "THE TWIGS" in the field of live performance, which as discussed below

11  she is not, The Twigs have no claim against Beggars, who is simply engaged in the

12  distribution of a Class 09 product, recorded music.

13  ## II.  A Temporary Restraining Order is Not Appropriate Under the
14  Circumstances

15  The issuance of a temporary restraining order is not appropriate where (1) the

16  case does not present extraordinary circumstances; (2) the party seeking the order has

17  not immediately sought relief; and (3) the party has not shown they are likely to prevail

18  on the merits.

19  ### A.  This Case Does Not Present Extraordinary Circumstances

20  The United States Supreme Court has explained that the circumstances justifying the

21  issuance of an ex parte temporary restraining order are extremely limited:

22

23  The stringent restrictions imposed . . . by Rule 65 on the availability of ex

24  parte temporary restraining orders reflect the fact that our entire

25  jurisprudence runs counter to the notion of court action taken before

26  reasonable notice and an opportunity to be heard has been granted both

27  sides of a dispute. Ex parte temporary restraining orders are no doubt

28  necessary in certain circumstances, but under federal law they should be

RESPONSE IN OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER

4

1
2
3

restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

4   *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 438–439 (1974) (internal
5   citation omitted). Consistent with the overriding concern articulated by the U.S.
6   Supreme Court, the Ninth Circuit has stated that there are "very few" circumstances
7   justifying the issuance of an ex parte TRO. *Reno Air Racing Ass'n, Inc. v. McCord,* 452
8   F.3d 1126, 1131 (9th Cir. 2006).

9   In this case, The Twigs have not offered any supported allegations whatsoever as
10  to why the circumstances here are so extraordinary that a TRO should issue before the
11  parties have a chance to be fully heard in a preliminary injunction hearing.

12
13

**B. The Twigs' Delay in Filing Suit Counsels Against the Entry of a Temporary Restraining Order**

14
15
16
17
18
19
20
21

Courts in this Circuit routinely find that TROs are only appropriate where parties seek immediate relief. *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.,* 907 F. Supp. 2d 1086, 1097 (N.D. Cal. 2012) (collecting cases finding TROs appropriate where there have only been minimal delays). In *Rovio,* the court found that waiting approximately six (6) months to seek a TRO was itself grounds to deny the relief sought. *Id.* Such a decision is only logical. The purpose of a temporary restraining order is to grant immediate temporary relief in the face of a harm that would be irreparable if allowed to go on.

22
23
24
25
26
27
28

In this case, it is clear The Twigs were on notice of the supposedly infringing activity for almost a year before this suit was filed, but chose not to act until now. If The Twigs believed irreparable harm would come from the marketing of music by FKA Twigs, The Twigs would have acted quickly to stop that harm. Instead, The Twigs have waited until the last minute in order to create a crisis and give themselves negotiating leverage regarding the future of FKA Twigs's use of her name. Accordingly, this Court

1  should deny The Twigs' request for a temporary restraining order.

2  **C. The Twigs have not Shown They are Likely to Prevail on the Merits**

3  Unless a party can show they are likely to prevail on the merits, a TRO is

4  inappropriate.  The Twigs have not shown that the FKA Twigs is so similar to "THE

5  TWIGS" as to create consumer confusion.  *See* Stark v. Diageo Chateau & Estate Wines

6  Co., 907 F. Supp. 2d 1042, 1066 (N.D. Cal. 2012) (holding the use of similar words for

7  the same or similar products did not equate to consumer confusion).  The Twigs have

8  not submitted any evidence, other than the hearsay statement of one of the band

9  members' 12-year-old niece, that there has been any consumer confusion.

10  In fact, in this case, the use of the name FKA Twigs is not infringing on The Twigs'

11  Service Mark and is not creating confusion.  Bands have routinely used derivative

12  names in order to avoid consumer confusion.  For instance, the music industry is replete

13  with instances of a band differentiating themselves from another band with the same

14  name by adding or removing words:  the band Dinosaur became Dinosaur Jr., Blink

15  became Blink 182, Suede became The London Suede, The Charlatans became The

16  Charlatans U.K., and The Olympic Hopefuls became The Hopefuls.  Here FKA Twigs

17  is clearly and easily distinguishable from The Twigs and does not take away from The

18  Twigs' Service Mark.  See *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 805-06 (6th

19  Cir. 2004) (POWERZONE does not dilute AUTOZONE under federal or Tennessee law

20  because there was not a "high degree of similarity" between these marks); *Ringling*

21  *Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d

22  449, 458 (4th Cir. 1999) (THE GREATEST SHOW ON EARTH not diluted by THE

23  GREATEST SNOW ON EARTH).

24  In addition to the fact the two names are not so similar as to create confusion, The

25  Twigs' own papers show that there are already multiple bands using the word "twigs" in

26  their names.  DE 10-3 at 4 ("There are at least five artists under the name Twigs").  A

27  public that has been exposed to extensive use of similar marks has presumably learned

28  to distinguish among them and thus no confusion exists. *Armstrong Cork Co. v. World*

1 | *Carpets, Inc.*, 597 F.2d 496, 505 (5th Cir.), *cert. denied*, 444 U.S. 932 (1979).  In fact,
2 | that same exhibit shows that consumers are able to distinguish between The Twigs and
3 | FKA Twigs, as many of the user comments included in the exhibit clearly state that
4 | consumers believe Ms. Barnett to be FKA Twigs and seek to avoid the other musical
5 | acts which include the word "twigs" in their name.  DE 10-3 at 5.  Therefore, The Twigs
6 | are not likely to prevail on a claim of trademark infringement against FKA Twigs, and
7 | this Court should deny their request for a temporary restraining order.

8 | **IV.    The Twigs have Failed to Prove Irreparable Harm**

9 | As a threshold matter, The Twigs failure to timely seek preliminary injunctive relief weighs
10 | against its contention that it is facing irreparable harm absent an injunction. *MercExchange, L.L.C. v.*
11 | *eBay, Inc.*, 500 F. Supp. 2d 556, 573 (E.D. Va. 2007); *PGBA v. U.S.*, 389 F.3d 1219, 1229 (Fed. Cir.
12 | 2004) (no error to lower court for "consider[ing] [plaintiff]'s failure to seek a preliminary injunction as
13 | a factor weighing against a grant of injunctive relief").  For 10 months The Twigs have not sought
14 | equitable relief.  Only now, on the day before FKA Twigs's United States debut have The Twigs
15 | sought relief.  That even The Twigs did not previously imagine irreparable harm would come from
16 | FKA Twigs's career supports a finding that no irreparable harm will occur.

17 | Further, The Twigs have not shown any actual irreparable harm.  The Twigs supposed evidence
18 | as summarized by counsel, DE 8 at 12-13, is that consumers searching for recordings by The Twigs
19 | may come across music by FKA Twigs.  That might be true.  Likewise consumers might come across
20 | music by the band, The New Pornographers, as that group has an album entitled *Twin Cinema*.
21 | However, The Twigs have made no showing that consumers would actually be confused or that The
22 | Twigs would somehow lose the goodwill of their fans.  Certainly, the hearsay statements from the 12-
23 | year old niece of The Twigs do not support that the niece believed FKA Twigs was the same as The
24 | Twigs.  Instead, that statement shows that even a 12 year old could distinguish between FKA Twigs
25 | and The Twigs.

26 | All the supposed evidence offered by The Twigs is speculative and based off the belief that
27 | certain events may occur in the future.  In *Precision Automation, Inc. v. Tech. Servs.*, 2007 WL
28 | 4480739, at 2-3 (D. Or. Dec. 14, 2007) although the plaintiff submitted several declarations to claim

RESPONSE IN OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER

1  past harm, because it failed to "provide evidence of any specific examples of such lost

2  sales," the Precision court found its submission insufficient to establish irreparable

3  injury. *Id.* at 4-7. The Precision court particularly rejected "speculation about possible

4  future harm" because it was not "supported by evidence in the record such as customer

5  statements, sales data, or market-share information." *Id.*

6       This sudden determination that The Twigs would suffer irreparable harm is

7  nothing more than a way to seek leverage in attempting to negotiate a settlement.  In

8  fact, The Twigs no this action is simply about money damages having offered to settle

9  for a one-time $500,000 payment. Ex. A at ¶ 9.  Injunctive relief is inappropriate where

10  money damages are an adequate remedy at law. *Flynt Dist. Co., Inc. v. Harvey*, 734

11  F.2d 1389, 1395 (9th Cir. 1984).  In this case, The Twigs, if successful, could be

12  compensate by money damages and are not entitled to injunctive relief.

13  **III.**   <u>**Conclusion**</u>

14       This is a dispute about money damages between two artists.  Beggars is not

15  properly a part of this dispute.  Based on the facts and circumstances set forth above,

16  Beggars prays this Court will deny The Twigs' application for a temporary restraining

17  order.

18

19  DATED:  April 10, 2014            Respectfully submitted

20

21                                      KING & BALLOW

22                                      By:   /s/ Paul H. Duvall

23                                          PAUL H. DUVALL

24                                          Attorneys for Defendants

25                                          BEGGARS GROUP HOLDINGS (USA), INC., a New York Corporation; BEGGARS BANQUET RECORDINGS (USA), INC., a New York Corporation; XL RECORDINGS (USA), INC., a California Corporation;

26

27

28